NOT DESIGNATED FOR PUBLICATION

No. 120,249

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of

MICHELE CATOIRE,
*Appellant*,

and

JAMES MICHAEL HIGGINS,
*Appellee.*

MEMORANDUM OPINION

Appeal from Johnson District Court; ERICA K. SCHOENIG, judge. Opinion filed March 13, 2020. Affirmed.

*Michele Catoire*, appellant pro se.

No appearance by appellee.

Before GARDNER, P.J., BUSER, J., and BURGESS, S.J.

PER CURIAM: Michele Catoire (Mother) and James Michael Higgins (Father) were involved in a very contentious divorce. In an agreed parenting plan, Father was granted primary custody of their two children. Over a period of several years, the parties continued to engage in continuous litigation relating to custody of the children. Eventually, the district court held a four-day trial to address the parties' various motions.

After the trial, the district court granted Father primary custody of the children. The court also considered evidence relating to money the parties spent on the children

1

and ordered Mother to reimburse Father for some of his expenses. Mother files this pro se appeal primarily arguing that the district court either failed to consider evidence or did not give evidence its proper weight. Finding no error, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Mother petitioned for divorce from Father in May 2013. An agreed permanent parenting plan was filed in January 2015. In broad strokes, the parenting plan granted Father sole custody for all medical decisions relating to the care of the parties' son, D.C.-H., joint custody of D.C.-H. in general, and shared parenting time of their daughter, C.C.-H. The parties also agreed that "necessary medical expenses" that were not covered by insurance should be split by the parties with Father paying 60% and Mother paying the remaining 40%. The parties were required to keep records of their individual expenses and reimburse the other as necessary to achieve the agreed upon allocation of medical bills. The parties also agreed that D.C.-H. and C.C.-H. would meet with a psychiatrist and psychotherapist to be chosen by the agreement of the parties. Additionally, the parties agreed to individually go to mental health counseling and follow recommendations. The divorce was granted in July 2015.

The agreed parenting plan and subsequent divorce did little to alleviate the animosity between the parties. As the district court noted in a June 2018 order, the parties "have been continuously involved in high-conflict litigation since the case was filed on May 14, 2013." According to the district court, the litigation was centered around the parties' disagreements regarding custody and parenting of their children.

In Spring 2016, C.C.-H. was taken to a mental health facility because her therapist feared C.C.-H. was suicidal. According to the therapist, C.C.-H. reported that she feared Mother and that Mother had hit her and called her horrible names. C.C.-H. said she felt

unsafe in Mother's home. As a result, the parties agreed that the children would primarily reside with Father, and Mother's parenting time was suspended.

Since Spring 2016, the parties and their children have worked with several mental health providers in an attempt to achieve a sense of normalcy for the family. There were disagreements between Mother and Father as to who would provide mental health care and what the goals of treatment should be. One area of contention between the parties was D.C.-H.'s diagnoses of attention deficit hyperactivity disorder (ADHD) and oppositional defiant disorder (ODD). Mother did not believe that D.C.-H. had or should be medicated for ADHD. Mother would tell her family therapist, in the presence of D.C.-H., that D.C.-H. did not need medication. Mother did not believe that expressing her thoughts on the matter, while D.C.-H. was present, was harmful. Father believed that D.C.-H. needed medication to control his ADHD.

One of D.C.-H.'s mental health providers explained that ODD caused D.C.-H. to be "argumentative, challenging, not cooperative with parental guidance, demands, structure and so on." The same mental health provider explained that while medication could be prescribed for the ADHD, ODD is a behavioral diagnosis which requires behavioral intervention as opposed to medicinal treatment.

With and without medication, D.C.-H. proved to have problems at home and in school. D.C.-H. was suspended from school for behavioral issues multiple times. Several of the suspensions were the result of D.C.-H. inappropriately touching female students. Ultimately, D.C.-H. was expelled for inappropriately touching a female student. The parties disagreed on what steps should be taken to ensure D.C.-H. would not continue to inappropriately touch other people.

Mother requested that D.C.-H. be seen by someone who was trained to treat sex offenders, as opposed to a standard mental health provider. Mother seemed to blame

3

D.C.-H.'s behavior, at least at some level, on Father. Throughout the case, Mother maintained that Father was abusive to her and the children. One witness testified that Mother fit the psychological profile of someone who had been abused. Several witnesses testified that the children reported that Father was not abusing them. However, there were indications that there might have been abuse in the past. D.C.-H. reported to at least one of his therapists that he was no longer being abused by Father.

There was also evidence presented that indicated Mother abused the children. Mother said in a deposition that she used a wooden spoon to spank the children. She also acknowledged weighing C.C.-H. "approximately every other day" to monitor her weight. Mother said that she later learned that C.C.-H. was bothered by the weighing but "at the time, she had no problems." Mother refused to acknowledge the alleged abuse, instead saying that the children were being told by someone that she abused them. Mother also refused to apologize for her actions towards the children. In contrast, Father appears to have acknowledged his previous abuse and apologized to his children.

An additional issue raised by the parties was the allocation of various expenses related to the care of the children and the various attorney fees incurred throughout the litigation. It appears that both parties raised various motions requesting different fees and expenses to be allocated to the other party. The district court denied each request for attorney fees to be assessed on the other party. However, the district court did reassess what the parties owed each other for medical expenses under the agreed parenting plan. The court determined that Mother owed Father $6,444.79, while Father owed Mother $3,720.69, for non-covered medical expenses. The court offset the amounts which resulted in the court ordering Mother to reimburse Father $2,724.10.

Mother timely appeals the district court's decision.

ANALYSIS

Mother raises several issues on appeal. In each issue, Mother essentially challenges the district court's factual determinations and conclusions based on those facts. "Given the district court's unique vantage point of what is often an emotionally charged situation in child custody disputes, an appellate court generally will not overturn such decisions unless the court abused its discretion." *In re Marriage of Bahlmann*, 56 Kan. App. 2d 901, 903, 440 P.3d 597 (2019).

A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. *Biglow v. Eidenberg*, 308 Kan. 873, 893, 424 P.3d 515 (2018).

When a party challenges the evidence the district court relied on to reach its decision, this court reviews the evidence in a light most favorable to the prevailing party to determine if the district court's factual findings are supported by substantial competent evidence and whether those findings support the court's legal conclusion. *In re Marriage of Bahlmann*, 56 Kan. App. 2d at 903. This court does not "reweigh evidence, pass on witness credibility, or redetermine questions of fact." 56 Kan. App. 2d at 903-04.

Given this standard of review, this court must determine whether substantial competent evidence supports the district court's decision and, if so, whether the district court abused its discretion in reaching its decision.

DID THE DISTRICT COURT ERR BY NOT ORDERING D.C.-H.
TO RECEIVE SEXUAL OFFENDER COUNSELING OR TREATMENT?

During the trial, Mother made it clear that she wanted D.C.-H. to be seen by someone trained to treat sex offenders. The district court did not do so and, in fact, did not mention the request in its written order. Generally, a party must object to inadequate

5

findings of fact and conclusions of law to allow the district court an opportunity to correct alleged inadequacies. Where no objection is made, appellate courts presume the trial court found all facts necessary to support its judgment. *Foster v. Stonebridge Life Ins. Co.*, 50 Kan. App. 2d 1, 11-12, 327 P.3d 1014 (2012). The record does not show that Mother objected to the district court's findings and conclusions.

At trial, no witness other than Mother indicated that D.C.-H. should be seen by someone who specialized in sexual offender treatment. Rachel Assal, a licensed clinical social worker, began meeting with D.C.-H. in January 2016. According to Assal, she had experience with, and felt comfortable, treating children that had been physically or sexually abused or were abusers themselves.

There was substantial competent evidence supporting the district court's decision to not require D.C.-H. to attend mental health services with someone who specialized in sexual offender treatment. Mother did not object to the district court's factual findings. There was no testimony presented—outside of Mother's stated desires—that D.C.-H. needed specialized treatment. Instead, Assal testified that she felt she could continue treatment of D.C.-H. The district court ordered D.C.-H. to continue in individual therapy with Assal. The district court did not abuse its discretion by not ordering D.C.-H. to attend specialized sexual offender treatment.

DID THE DISTRICT COURT ERR BY GRANTING FATHER
SOLE LEGAL CUSTODY AND GRANTING MOTHER PARENTING TIME?

Mother argues the district court ignored her allegations of abuse by Father when it granted Father primary custodial care of the children. The record does not support Mother's claim.

6

When deciding issues of legal custody, residency, and parenting time the district court is required to consider several statutory factors. K.S.A. 2019 Supp. 23-3203(a)(1)-(18). One factor explicitly requires the district court to consider "evidence of domestic abuse." K.S.A. 2019 Supp. 23-3203(a)(9).

The district court considered all the claims of abuse. The district court noted that both parties alleged the other party was abusive. The court also credited the Guardian Ad Litem's statement that both children were subjected to yelling and emotional abuse on a daily basis. The court also considered Mother's statements alleging Father was physically, mentally, and emotionally abusive toward the children during the marriage. The court also noted that there was no evidence presented that Father continued to abuse the children. The court reasoned that it must consider "where the parties are now, and what has happened since they were divorced."

The district court found that Father had apologized for his past actions. On the other hand, Mother made minimal progress in addressing her own abuse of the children. The court emphasized that Mother "has not apologized to the children for her actions, and in fact, has yet to acknowledge that she has any need to apologize."

Mother also argues the district court erred by considering the desires of D.C.-H. in determining custody arrangements. Mother suggests that D.C.-H. was brainwashed into saying that he wanted to live with Father. In support, Mother cites to *K.A. v. T.R.*, 86 Mass. App. Ct. 554, 18 N.E.3d 1107 (2014), where the Massachusetts Court of Appeals examined an issue of child custody after the father had been accused of physical abuse. The mother testified that the father was physically abusive toward her throughout the marriage, but the district court ultimately granted the father primary custody of the children. This case has little precedential value and is actually supportive of the district court's determination of custody.

7

Part of the Massachusetts District Court's reason for granting father primary custody was based on testimony that the mother had become abusive toward the children and the children felt safer with their father. 86 Mass. App. Ct. at 558. The mother presented expert testimony that suggested the children were "brainwashed" by their father into not wanting to stay with mother and that domestic violence could play a significant role in "brainwashing." 86 Mass. App. Ct. at 558-59, n.9. But the district court rejected the expert's opinion, finding there was no credible evidence to show that the children were "brainwashed" by the father. 86 Mass. App. Ct. at 559. The appellate court affirmed the district court's decision, finding that "the present case was not about punishing a party for past bad behavior, but was about deciding what was best for the children going forward." 86 Mass. App. Ct. at 565. The appellate court noted that the district court was not required to accept the testimony of mother's expert. The court reasoned that the evidence supported the district court's ultimate decision to give the father primary custody of the children. 86 Mass. App. Ct. at 566.

In the present case, Mother did not offer any expert testimony that the children were "brainwashed" or coerced into stating they desired to live with Father. The district court could, and indeed was required to, consider "the desires of a child of sufficient age and maturity as to the child's custody or residency." K.S.A. 2019 Supp. 23-3203(a)(3). The court did so here. As stated above, this court will not reweigh the testimony or the credibility of the witnesses. *In re Marriage of Bahlmann*, 56 Kan. App. 2d at 903-04. The district court heard the evidence, weighed the factors which Mother complains of on appeal—along with several other factors—and granted Father sole custody. The district court's decision was not based on an error of law or an error of fact. There is nothing to show the district court's decision was unreasonable. The district court did not abuse its discretion. See *Eidenberg*, 308 Kan. at 893.

## DID THE DISTRICT COURT ERR IN APPORTIONING EXPENSES BETWEEN THE PARTIES?

The district court reapportioned various expenses by the parties and ultimately ordered Mother to reimburse Father $2,724.10. Mother argues the district court erred because Father did not follow the express terms of their original parenting agreement.

The district court reached its decision after considering documents that are not before this court on appeal. Mother bears the burden for designating a record sufficient to present her points and establish her claim. See *Friedman v. Kansas State Bd. of Healing Arts*, 296 Kan. 636, 644, 294 P.3d 287 (2013). She fails to do so here. This court cannot properly examine the district court's decision with the scant evidence available. Without the documents, this court cannot say the district court erred.

## DID THE DISTRICT COURT ERR BY NOT CONSIDERING SEVERAL FACTORS RAISED BY MOTHER?

Mother's final argument on appeal appears to suggest that the district court ignored several facts relating to Father's actions before the trial. Mother suggests that Father failed to follow court orders or consult with Mother regarding D.C.-H.'s care. The district court heard evidence from both parties—including evidence that portrayed Father in a less than favorable light. The court noted that Father did fail to follow certain orders. The court also noted that Mother contributed to several of the problems between the parties.

The district court considered multiple factors when it determined that the children should live with Father. When viewing the evidence in a light most favorable to Father, there was substantial competent evidence to support the district court's decision. Mother's argument is essentially asking this court to reweigh the evidence presented at trial, which this court cannot do. See *In re Marriage of Bahlmann*, 56 Kan. App. 2d at 903-04. The district court's decision was not based on an error of law or an error of fact. And the

9

district court's decision was reasonable under the circumstances. The district court did not abuse its discretion by granting Father primary custody of the children and granting Mother visitation. See 56 Kan. App. 2d at 903.

Affirmed.